*BICKERTON SAUNDERS DANG & SULLIVAN*
JAMES J. BICKERTON         3085
BARRY A. SULLIVAN          5865
SCOTT K. SAIKI             5595
K. BARTLETT DURAND, JR.    7744
745 Fort Street, Ste. 801
Honolulu, Hawaii 96813
Tel. No. 808.599.3811  Fax No. 808.533.2467
E-Mail: bickerton@bsds.com

*CLAY CHAPMAN CRUMPTON IWAMURA & PULICE*
GERALD S. CLAY             1439
SCOTT I. BATTERMAN         5017
700 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Tel. No. 808.535.8400  Fax No. 808.535.8444
E-Mail: clay@paclawteam.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GARY YOKOYAMA, attorney-in-fact for Leatrice C. Yokoyama, individually and on behalf of a Class of Similarly Situated Persons,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDLAND NATIONAL LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. CV#05-00303 JMS KSC<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION, FILED ON NOVEMBER 9, 2006; DECLARATION OF SCOTT K. SAIKI; EXHIBIT 38; CERTIFICATE OF SERVICE**<br><br>Date  :  December 29, 2006<br>Time  :  9:30 a.m.<br>Judge :  Hon. Kevin S.C. Chang |

## TABLE OF CONTENTS

I.    THE PRIOR RULING ON CERTIFICATION DOES NOT RAISE
      PLAINTIFF'S BURDEN WITH REGARD TO THE INSTANT
      MOTION ........................................................................................... 1

      A.    The Court did Not Hold that Inherent Unsuitability Must Be
            Established Individually ............................................................ 2

      B.    The Court did not have the Benefit of the Hawai'i Supreme
            Court's Decision in <u>Courbat v. Dahana Ranch, Inc</u>. ................. 3

      C.    The Court did not have the Benefit of the Decision Granting
            Class Certification Under Almost Identical Facts in
            <u>Negrete v. Allianz Life Insurance.</u>, ___ F.R.D. ___ ,
            2006 WL 3421816 (C.D. Cal. Nov. 21, 2006) ........................... 4

II.   COMMON ISSUES CLEARLY PREDOMINATE
      UNDER FRCP 23(B)(3) ....................................................................... 7

      A.    The Question of Whether Midland Engaged in an
            Unfair and Deceptive  Practice When it Marketed
            and Sold the FIAs Can Be Decided on A Class-Wide Basis ... 7

      1.    Midland's Dispute Concerning the Facts is
            Not An Appropriate Consideration
            on Class Certification ............................................................... 8

      2.    The Characteristics of the Individual Plaintiffs Are Not
            Relevant to Proof that Midland Engaged in an
            Unfair and Deceptive Act ........................................................ 10

      3.    The Characteristics of Individual Agents Are Not Relevant to
            Determining Whether Midland's Contracts and Written Sales
            Materials Were Unfair and Deceptive  .................................... 11

4.  Midland's Post-Sale Servicing of the
Policy Holders in Irrelevant to Determining
Whether the Marketing and Sale of the Policies
Violated Section 480. ........................................................... 12

B.  The Question of Whether Senior Purchasers of FIAs Were
Injured as a Result of Midland's Deceptive Practice Can Be
Decided on a Class-wide Basis Because a Presumption of
Reliance Applies ..................................................................... 13

C.  Proof of Damages Can Be Established by a Common
Formula and Will Not Defeat Predominance in Any Event. . .15

III.  THE CLASS ACTION DEVICE IS CLEARLY SUPERIOR
CERTIFICATION UNDER RULE 23(B)(1) WOULD ALSO BE
APPROPRIATE ................................................................................ 17

IV.  CERTIFICATION UNDER RULE 23(B)(1) WOULD ALSO BE
APPROPRIATE ................................................................................ 19

# TABLE OF AUTHORITIES

## CASES

*Amato v. General Motors Corp.,*
463 N.E.2d 625, 630 (Ohio App. 1982) ................................................................. 15

*Blackie v. Barrack,*
524 F.2d 891, 905 (9th Cir. 1975) ........................................................................ 8

*Caridad v. Metro-North Commuter R.R.,*
191 F.3d 283, 291 (2d Cir. 1999) ......................................................................... 9

*Cohn v. Massachusetts Mut. Life Ins. Co.,*
188 F.R.D. 332 (D.Minn. 1999) ............................................................................ 7

*Courbat v. Dahana Ranch, Inc.,*
111 Haw. 254, 141 P.3d 427 (2006) .............................................................. 3, 7, 10

*Dix v. American Bankers Life Assur. Co.of Florida,*
415 N.W.2d 206, 209 (Mich. 1987) ..................................................................... 14

*Group Health Plan, Inc. v. Philip Morris Inc.,*
621 N.W.2d 2, 15 (Minn. 2001) ............................................................................ 8

*Hum v. Dericks,*
162 F.R.D. 628, 640 (D. Haw. 1995) ................................................................... 11

*In re Electronic Data Systems Corp. Securities Litigation,*
226 F.R.D. 559 (E.D. Ex. 2005) .......................................................................... 18

*In re LifeUSA Holding Inc.,*
242 F.3d 136 (3rd Cir. 2001) .............................................................................. 12

*In re NCAA I-A Walk-On Football Players Litigation,*
2006 WL 1207915 at *3 (W.D. Wash. 2006) ........................................................ 6

*Massachusetts Mutual Life Ins. Co. v. Superior Court,*
97 Ca.App.4th 1282, 119 Cal.Rptr.2d 190 (Cal.App. 2002) ................................. 13

*Negrete v. Allianz Life Insurance,*
  __F.R.D. __, 2006 WL 3421816 (C.D. Cal. Nov. 21, 2006)....4, 5, 6, 12, 14, 16, 17

*Parkhill v. Minnesota Mut. Life Ins. Co.,*
  188 F.R.D. 332 (D.Minn. 1999)................................................................. 8

*Pickett v. Holland America Line-Westours, Inc.,*
  6 P.3d 63, 72 (Wash. App.) ..................................................................... 13

*Pickett v. IBP, Inc.,*
  2001 WL 34886460, at *9 ...................................................................... 17

*Schwab v. Philip Morris USA, Inc.,*
  449 F.Supp.2d 992, 1129 (E.D.N.Y. 2006)....................................... 16, 17

*Schwartz v. Upper Deck Co.,*
  183 F.R.D. 672 (S.D. Cal. 1999)............................................................... 8

*Smilow v. Southwestern Bell Mibile Sys., Inc.,*
  323 F.3d, 32, 40 (1st Cir. 2003) ............................................................. 17

*State ex rel. Bronster v. United States Steel Corp.,*
  82 Haw. 32, 51 (1996)............................................................................ 10

*Szabo v. Bridgeport Machines, Inc.,*
  249 F.3d 672 (7th Cir. 2001)................................................................. 8, 9

*Van West v. Midland Nat. Life Ins. Co.,*
  199 F.R.D. 448, 454 (D.R.I. 2001)......................................................... 18

*Varacallo v. Massachusetts Mut. Life Ins. Co.,*
  752 A.2d 807 (N.J. Super 2000)............................................................. 15

*Westways World Travel, Inc. v. AMR Corp.,*
  218 F.R.D. 223 (218 F.R.D. 223 (C.D. Cal. 2003) ................................... 8

## RULES

Fed.R.Civ. P. 23(B) ............................................................................................ 19
Fed.R.Civ.P. 23(b)(1) ......................................................................................... 19
Fed. R.Civ. 23(b)(3) ..................................................................................... 7, 17

## STATUTES

HRS Section 480 ........................................................................................ 9, 10, 12
HRS Section 480-2 ............................................................................................ 3, 7
HRS Section 480-13 ............................................................................................ 16

I. **THE PRIOR RULING ON CERTIFICATION DOES NOT RAISE PLAINTIFF'S BURDEN WITH REGARD TO THE INSTANT MOTION.**

Midland argues repeatedly, without any authority, that Plaintiffs bear a heightened burden because their first Motion for Certification was denied without prejudice. Their argument misconstrues the Court's first ruling and misunderstands Plaintiffs' theory of the case. At the same time the Court denied Plaintiffs' first motion without prejudice, it invited them to file their Third Amended Complaint, and took pains to avoid prejudging the issue of certification on the new theories to be presented in the Third Amended Complaint. Subsequently, the parties stipulated to the filing of a Fourth Amended Complaint to correct a typographical error.

There are others reasons why the Court's prior denial without prejudice should have limited effect. First, when the Court denied certification in July 2006, it apparently had not reviewed a recent Hawai'i case explaining that proof of unfair and deceptive practices is ***objective*** and focuses solely on the conduct of defendant. The Court also did not have the benefit of a very recent federal court decision certifying a nationwide class of fixed index annuity ("FIA") purchasers in a case presenting issues almost identical to those presented here where certification was supported by the same expert that Plaintiffs rely on here. Based on the changes in Plaintiffs'

1

theory of the case and in the controlling law, the questions presented on certification in this motion are entitled to consideration *de novo*.

### A. The Court did Not Hold that Inherent Unsuitability Must Be Established Individually.

Midland claims that because the order denying certification without prejudice held that the claim of non-suitability made in the Second Amended Complaint required individual proof, the question of "suitability" raised in the Third Amended Complaint must also present individual issues. Memorandum in Opposition ("MIO") at 11. This is flatly wrong, since the revised theory of liability is not an individual "suitability" theory and, in any event, the Court recognized in denying the prior motion without prejudice that the Plaintiffs' allegations regarding "suitability" had changed. The Court described the manner in which the Plaintiffs presented the suitability issue in the Second Amended Complaint:

> In their Second Amended Complaint and Motion for Class Certification, the Plaintiffs **do not argue that deferred annuities are universally unsuitable for seniors;** rather their position is that the product is unsuitable for *most* seniors and therefore Midland should have taken steps to ensure that senior customers did not purchase an investment that was not appropriate for them. . . . [D]isposition of the proposed class's claims, **which turn on the suitability of Midland's product for class members**, will require a fact-specific individualized analysis as to each plaintiff.

Order Denying Motion Without Prejudice at 3-4 (emphasis added).

The Court recognized that the suitability argument that Plaintiffs now present is materially different:

> In their Reply Memorandum, the Plaintiffs shift their theory of the case entirely. **They argue that Midlands' deferred annuities are an *inherently* defective product, unsuitable for *any* investor,** and that Midland failed to disclose to either its customers or its sales force information necessary to make an informed decision about purchasing the product . . . . **[T]he Court does not address this argument.**

Order Denying Motion Without Prejudice at 5 (emphasis added).

### B.   The Court did not have the Benefit of the Hawai'i Supreme Court's Decision in <u>Courbat v. Dahana Ranch, Inc.</u>

This year, the Hawai'i Supreme Court adopted a new standard for determining whether a defendant engaged in unfair and deceptive practices under Section 480-2, H.R.S.   <u>Courbat v. Dahana Ranch, Inc.</u>, 111 Hawai'i 254, 141 P.3d 427 (2006), was issued on July 10, 2006, only four days before Judge Seabright issued his order.   <u>Courbat</u> is controlling and critical to resolving certification issues, since it makes clear that the question of whether a defendant has engaged in an unfair and deceptive practice under Section 480-2 is decided on *an objective standard* and can therefore be decided without regard to the attributes of the individual plaintiff.

The Hawai'i Supreme Court announced:

3

> a deceptive act or practice is "(1) a representation, omission, or practice[ ] that (2) is likely to mislead consumers acting reasonably under the circumstances [where] (3) [ ] the representation, omission, or practice is material." . . . A representation, omission, or practice is considered "material" if it involves " 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.' " . . . *[The] test is an objective one*, turning on whether the act or omission "is likely to mislead consumers," . . . as to information "important to consumers," . . . in making a decision regarding the product or service.

111 Hawai'i at 262, 141 P.3d at 435 (emphasis added).

## C.    The Court did not have the Benefit of the Decision Granting Class Certification Under Almost Identical Facts in <u>Negrete v. Allianz Life Insurance.</u>, ___ F.R.D. ___ , 2006 WL 3421816 (C.D. Cal. Nov. 21, 2006)

On November 21, 2006, Judge Christina Snyder of the United States District Court for the Central District of California granted nationwide class certification to senior citizen purchasers of deferred annuity contracts issued Allianz Life Insurance. Plaintiffs in that case allege that the sale of the annuities, which are similar in all pertinent respects to the FIAs sold by Midland, violated the federal RICO statute as well as California state laws pertaining to elder abuse, unfair competition and false advertising.

In finding that common issues predominated over individual issues and that the class action device was the superior method for resolving the

claim, Judge Snyder disposed of many of the arguments raised by Midland here.   A copy of the order granting class certification in <u>Negrete</u> is attached hereto as Exhibit "1" to the Declaration of James J. Bickerton.[1]

In particular, the <u>Negrete</u> Court rejected the insurer's claim that plaintiffs would have to come forward with individual evidence that each plaintiff relied on the alleged misrepresentation and sustained harm.   The Court explained:

> If class plaintiffs can show that generalized methods of proof are available to show that uniform representations were made to all class members which were misleading because they failed to disclose that all of the annuities at issue were worth less that the purchase prices paid for them or are fundamentally inferior to comparable products, then plaintiffs may be able to show that they have available a means of demonstrating reliance on a class-wide basis.
> Generalized proof that the common, uniform written sales marketing materials are misleading because they fail to disclose that Allianz deferred annuities are worth substantially less than the prices paid for them, or would give rise to a common sense inference that no rational class member would purchase the annuities in questions upon adequate disclosure of the facts, regardless of their individual circumstances, may be employed as a means of establishing class-wide proof of

---

[1] Midland ignores <u>Negrete</u> and numerous other cases cited herein to claim that "Case law Consistently Holds that Individual Issues Predominate in Insurance Sales Cases." MIO at 14. In fact, there are only a handful of cases denying certification, and these are clearly distinguishable. <u>See</u> notes, *infra.*

damages. . . .

2006 WL 3421816, at *8.

The <u>Negrete</u> Court also disposed of the insurer's objection to Dr.

McCann, who serves as an expert in that case as well:

> Allianz argues, in effect, that Dr. McCann is
> comparing apples to oranges, because his principal
> benchmark comparative investment portfolio is not
> equally safe, does not take into account certain of
> the benefits of the annuities, and depends partly on
> the assumption that many seniors would need to
> incur withdrawal penalties. . . . [W]hat is
> important at this stage of the proceedings is that
> plaintiffs have offered a facially plausible method
> for showing causation and impact across-the-
> board, so that a class should be certified.

<u>Id.</u>[2] Since the <u>Negrete</u> court certified a nationwide class based on nearly

identical issues and similar proof, Plaintiffs respectfully submit that the

soon-to-be-published authority should be deemed persuasive authority and

followed here.

---

[2] The only basis on which Midland seeks to distinguish <u>Negrete</u> is that it has
now produced its own expert to argue that Dr. McCann is not an appropriate
expert witness.  MIO at 23 n.3.  This argument ignores the fact that
Defendant Allianz -- represented by the same lawyers who represent
Midland here -- clearly raised the same objections to Dr. McCann's
testimony, and the <u>Negrete</u> Court did not find them persuasive.  It also
ignores the fact that the court is not supposed to engage in rigorous
examination of expert qualifications or a battle of the experts at the
certification stage. <u>E.g.,</u> <u>In re NCAA I-A Walk-On Football Players</u>
<u>Litigation</u>, 2006 WL 1207915, at *3 (W.D.Wash.,2006). *See generally*,
Plaintiffs' Memorandum in Opposition to Midland's Motion to Exclude the
Declaration of Craig McCann, filed on even date herewith.

## II.   COMMON ISSUES CLEARLY PREDOMINATE UNDER FRCP 23(B)(3)

### A.   The Question of Whether Midland Engaged in an Unfair and Deceptive Practice When it Marketed and Sold the FIAs Can Be Decided on A Class-Wide Basis.

In their Third Amended Complaint, Plaintiffs allege that Midland engaged in an unfair and deceptive practice when it marketed and sold a product that was *inherently* unfair and deceptive due to the concealment of the factors that would reveal its true value.  In their current Motion for Class Certification, Plaintiffs have explained that this claim can be decided on a class-wide basis.  Courbat confirms Plaintiffs' argument, since it holds that deception is established by an *objective* showing that Defendants' actions: (1) mislead reasonable consumers; and (2) concern matters that reasonable consumers would find material.  Common resolution of these critical issues is enough to show predominance under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

Since Plaintiffs' claims are limited to violation of Section 480-2, with its broad and objective criteria for determining whether an act is deceptive, this case is clearly distinguishable from Cohn v. Massachusetts Mut. Life Ins. Co., 189 F.R.D. 209 (D. Conn. 1999), relied on by Midland in its opposition.  Cohn involved claims for breach of contract and fraud, and the court found that these causes of action required individualized proof, such as

7

proof of individual reliance to sustain a cause of action for fraud. 189 F.R.D. at 215. In contrast, claims for consumer fraud do not require individual proof of reliance.   See Section IIB infra.

Midland also cites a case denying class certification because individual proof of reliance was required in a consumer fraud act case. Parkhill v. Minnesota Mut. Life Ins. Co., 188 F.R.D. 332 (D. Minn. 1999). The Minnesota Supreme Court expressly rejected Parkhill, and held that no individual proof of reliance was required under the act.  Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 15 (Minn. 2001).

### 1.   Midland's Dispute Concerning the Facts is Not An Appropriate Consideration on Class Certification

Midland devotes the vast majority of its voluminous opposition and exhibits to disputing Plaintiffs' factual allegations. This is not an appropriate response to a motion for certification, as Plaintiffs explained in their motion. In this Circuit, the "court is bound to take the substantive allegations of the complaint as true" at the class certification stage.   Blackie v. Barrack, 524 F.2d 891, 901 n. 17 (9th Cir. 1975); Westways World Travel, Inc. v. AMR Corp., 218 F.R.D. 223 (218 F.R.D. 223 (C.D. Cal. 2003); Schwartz v. Upper Deck Co., 183 F.R.D. 672 (S.D. Cal. 1999).  Midland suggests this Court should engage in fact finding at the certification stage, citing the Seventh Circuit in Szabo v. Bridgeport Machines, Inc., 249 F.3d

672 (7th Cir. 2001).  MIO at 13.  <u>Szabo</u> is not consistent with the law of the

Ninth Circuit described above, or with the law of other circuits. <u>E.g.,</u>

<u>Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 291 (2d Cir. 1999).[3]

Even if this Court were to consider the merits at the certification

stage, the record contains sufficient facts and expert opinion to support the

basis for Plaintiffs' motion for certification.  In fact, key facts supporting

certification have actually been admitted by Midland.  Midland admits that it

ensures that its standard written materials are received by all purchasers, and

that its agents do not make statements inconsistent with those materials.

Tekolste Declaration at ¶ 50.  Midland also admits that does not disclose its

commission payments, or its complete discretion to determine the

percentage reduction of profits based on its index cap and index margin, to

any purchasers.[4]  These facts clearly show uniform treatment of class

members by Midland, and thus clearly provided a basis for class-wide proof

of unfair and deceptive practices by Midland under Hawai'i law.

---

[3] Midland also erroneously suggests that, in order to certify a class, this
Court would have to make certain factual findings in Plaintiffs' favor.  MIO
at 24.

[4] Midland claims that it discloses its method of calculation of index caps and
margins in dvd and written form to consumers one year after the purchase of
the FIA.  Declaration of Rebecca Giofreddi.  This belated disclosure --
coming when the consumer cannot avoid the surrender penalty -- certainly
does not save Midland from liability under Chapter 480 H.R.S.

## 2.   The Characteristics of the Individual Plaintiffs Are Not Relevant to Proof that Midland Engaged in an Unfair and Deceptive Act

Midland also devotes substantial energies to pointing to potential differences in the way that potential class members may have received or understood the allegedly misleading information.  For example, Midland contends that Plaintiffs must establish what each purchaser subjectively believed about commission payments, MIO at 18; whether each purchaser read supposedly misleading representations; id.; and what each purchaser understood about surrender charges, index margins and index caps.  MIO at 19-20.  In fact, as Courbat makes clear, none of this individualized information is relevant:  The focus of the inquiry is on the *capacity* of Midland's representations and conduct to mislead a reasonable consumer. Courbat, 111 Hawai'i at 262, 141 P.3d at 435.

Under H.R.S. Chapter 480, "actual deception need not be shown; the capacity to deceive is sufficient." State ex rel. Bronster v. United States Steel Corp., 82 Hawai'i 32, 51 (1996).  Capacity to deceive can clearly be decided for the class as a whole without regard to class member's individual receipt of or reaction to Midland's misrepresentations.[5]

---

[5] Since Plaintiffs' individual characteristics are not relevant to the question of whether Midland engaged in unfair and deceptive trade practices, Midland's

10

3.    **The Characteristics of Individual Agents Are Not Relevant to Determining Whether Midland's Contracts and Written Sales Materials Were Unfair and Deceptive**

Midland also attempts to focus on the conduct of the individual agents selling its FIAs to show that individual issues predominate.  This argument ignores the fact that Plaintiffs' claim is that Midland's own conduct (representations and omissions) constituted an unfair and deceptive trade practice, without regard to anything its agents may have done.  Because Midland prepared uniform and standard written disclosures and took steps to ensure that its message was presented to all class members in an unaltered form without contradiction by its agents, the question of whether its conduct was deceptive presents a common question.  This case is therefore unlike Hum v. Dericks, 162 F.R.D. 628, 640 (D. Haw. 1995), which involved individualized, undocumented oral presentations by the defendant physician.[6]

conclusory argument on typicality and adequacy grounds, MIO at 29 n. 4, must be rejected.

[6] There is, of course, some potential that some agents may have alleviated the effects of Midlands' deceptive practices by more fully explaining the misleading aspects of Midlands' sales materials.  Midland has not produced evidence of this; if anything, the agents' presentations seemed to perpetuate rather than correct Midland's misrepresentations.  See Exhibit "A" to the Declaration of E.A. Buck (Customer Agreement stating that "[t]here are no fees for our services at any time.").

The facts in this case are almost identical to those in <u>Negrete,</u> where the Court found a "standardized written presentation" amenable to class proof.   2006 WL 3421816, at *8.   As the <u>Negrete</u> court noted, "'no specific forms of proof, for example, uniform written scripts for any oral communications and uniform training of sales agents' are required to establish the existence of standardized misrepresentations." <u>Id.</u> at *7, (internal citation omitted).[7]

### 4.    Midland's Post-Sale Servicing of the Policy Holders in Irrelevant to Determining Whether the Marketing and Sale of the Policies Violated Section 480.

Midland also claims that, because policy-holders had different experiences with Midland after the sale of their policies, individual issues predominate. However, Plaintiffs' cause of action is based on the marketing and sale of an inherently unsuitable product.  Unfair and deceptive acts prior to and during sale

---

In any event, if certain agents corrected Midland's misrepresentations or omissions, then Midland may be in a position to argue that certain Plaintiffs were not harmed as a result of its deceptive practice, as explained in Section II.B below.

[7] In contrast, the trial court in <u>In re LifeUSA Holding Inc.,</u> 242 F.3d 136 (3rd Cir. 2001), expressly found that there was <u>no uniformity</u> in the sales presentation made by independent agents to potential purchasers. Significantly, the trial and appellate court noted that the agents did not utilize the insurer's marketing materials uniformly, and some did not use them at all. 242 F.3d at 146-47.  Those findings clearly distinguish the case from <u>Negrete</u> and from the present case.

"do their damage when they induce action that a consumer would not otherwise have undertaken." <u>Zanakis-Pico v. Cutter Dodge, Inc.</u>, 98 Hawai'i 309, 317, 47 P.3d 1222, 1230 (2002). Since the class members' cause of action accrued when they purchased the unsuitable FIAs, variations in their post-sale experiences are not germane to proof of their claim and cannot defeat commonality.

> **B.    The Question of Whether Senior Purchasers of FIAs Were Injured as a Result of Midland's Deceptive Practice Can Be Decided on a Class-wide Basis Because a Presumption of Reliance Applies.**

It is true that a plaintiff seeking to recover for unfair and deceptive trade practices must show that he or she sustained an injury as a result of Defendant's unfair or deceptive practice. However, it is not the case that harm from an unfair and deceptive act must also be proven on an individual basis. This is because reliance upon and injury from an unfair and deceptive practice will generally be presumed in statutory unfair trade cases. <u>Pickett v. Holland America Line-Westours, Inc.</u>, 6 P.3d 63, 72 (Wash. App. 2000) (discussing numerous cases where reliance/harm presumed in class action cases brought under state consumer protection laws), <u>rev'd on other grounds</u> 35 P.3d 351 (Wash. 2001).

In <u>Massachusetts Mutual Life Ins. Co. v. Superior Court</u>, 97 Cal.App.4th 1282, 119 Cal.Rptr.2d 190 (Cal. App. 2002), a California court considered the propriety of certification of a class of consumers challenging

an insurer's failure to disclose its intent to change its method of calculating

discretionary dividends in "vanishing premium" cases.  The insurer claimed

the consumer statute's requirement of an element of damages demanded

individualized proof of reliance and harm.  The court disagreed:

> Contrary to Mass Mutual's contention, the
> causation required by Civil Code section 1780
> does not make the plaintiffs' claims unsuitable for
> class treatment.  "Causation as to each class
> member is commonly proved more likely than not
> by materiality.   That showing will undoubtedly be
> conclusive as to most of the class.   The fact a
> defendant may be able to defeat the showing of
> causation as to a few individual class members
> does not transform the common question into a
> multitude of individual ones; plaintiffs satisfy their
> burden of showing causation as to each by
> showing materiality as to all. . . ."

97 Cal.App. 4th at 1291-92.  See also Dix v. American Bankers Life Assur.

Co. of Florida, 415 N.W.2d 206, 209 (Mich. 1987) (consumer protection

statute claim for misrepresentation of life insurance policy).

Consistent with the foregoing authority, the Court in Negrete found

that reliance and harm could be established on a class wide basis.  The Court

explained that:

> Generalized proof that the common, uniform
> written sales marketing materials are misleading
> because they fail to disclose that the Allianz
> deferred annuities are worth substantially less than
> the prices paid for them, or would give rise to a
> common sense inference that no rational class

> member would purchase the annuities in questions
> upon adequate disclosure of the facts, regardless of
> their individual circumstances, may be employed
> as a means of establishing class-wide proof of
> damages.

2006 WL 3421816, at *8.

In cases where reliance and injury are presumed or inferred, the

defendant may overcome the presumption with individual proof that a

particular purchaser did not act in reliance on the misrepresentation.

Varacallo v. Massachusetts Mut. Life Ins. Co., 752 A.2d 807 (N.J. Super.

2000) ("Of course, the inference may be rebutted, but it is the burden of the

defendant to come forward with sufficient evidence to do so."); Amato v.

General Motors Corp., 463 N.E.2d 625, 630 (Ohio App. 1982).[8]

### C. Proof of Damages Can Be Established by a Common Formula and Will Not Defeat Predominance in Any Event.

In this case, the question of damages will be susceptible to common

methods of proof.  Dr. McCann has prepared a formula which can be applied

to purchasers that will determine the extent of damages suffered.  The Court

---

[8] Midland has also suggested that individual class members may have relied on unique misrepresentations made by their sales agent in purchasing the FIA.  Such occasional reliance would not defeat certification or recovery against Midland here.  Varacallo, 752 A.2d at 816-17 ("It may be that some extraordinary sales agent could overcome such negative information thereby becoming the superceding cause of a policyholder's loss, but we think it a small possibility.")

in Negrete evaluated Dr. McCann's proposal for calculating damages and found it presented an appropriate issue for certification. 2006 WL 3421816, at *10.

Midland has not specifically attacked Dr. McCann's damage formula, and in any event courts have cautioned that it is not appropriate to consider such a challenge at the certification stage. The court in Schwab v. Philip Morris USA, Inc., explained:

> A class certification motion is not the proper forum in which to evaluate the merits of experts' theory of damages, but only to ascertain whether they are colorable. . . See also Aspinall, 442 Mass. at 400, 813 N.E.2d 476 ("Whether plaintiffs ultimately will be successful in proving actual damages is a matter that need not be resolved at the certification stage").

449 F. Supp.2d 992, 1129 (E.D.N.Y. 2006).

It should also not be overlooked that each senior may be awarded a flat statutory damage award of $5,000 under HRS § 480-13. If the Court decides to apply this formula for all those whose trebled damages might be less than $5,000 following a verdict in Plaintiffs' favor, there would not even be a need for damages calculations for those class members.

Even if damages were to require individual proof, this fact will almost never outweigh common issues in the predominance test. This is because "[a]n individual determination of damages is a 'frail obstacl[e] to

16

certification when measured against the substantial benefits of judicial

economy achieved by class treatment of the predominating, common

issues.'" Pickett v. IBP, Inc., 2001 WL 34886460, at *9; see also Schwab,

449 F. Supp.2d at 1129 ("There is no persuasive reason why individualized

damages should preclude certification under Rule 23(b)(3), even were they

to become an issue, 'when the issue of liability can be determined on a class-

wide basis.'").

> The Court in Negrete similarly recognized:

> > "The individuation of damages in consumer class
> > actions is rarely determinative under Rule 23(b)(3)
> > . Where [ ] common questions predominate
> > regarding liability, then courts generally find the
> > predominance requirement to be satisfied even if
> > individual damages issues remain." Smilow v.
> > Southwestern Bell Mibile Sys., Inc., 323 F.3d 32,
> > 40 (1st Cir. 2003) . . . Blackie v. Barrack,
> > 524 F.2d 891, 905 (9th Cir.1975) ("The amount of
> > damages is invariably an individual question and
> > does not defeat class action treatment.").

2006 WL 3421816, at *10 (internal citations omitted).

## III.    THE CLASS ACTION DEVICE IS CLEARLY SUPERIOR

As set forth above and in the motion for certification, Plaintiffs have

pointed to a number of critical common issues that render class treatment

superior to other methods of proceeding with this claim.[9]  Since none of the individual issues claimed by Midland are actually germane to Plaintiffs' case, those issues certainly do not predominate.

In a case such as this one, plaintiffs seeking to represent a class need not present a plan to demonstrate that certification is appropriate.  In re Electronic Data Systems Corp. Securities Litigation, 226 F.R.D. 559 (E.D. Tex. 2005) (proposed class representative is not required to submit a trial plan in order satisfy superiority requirement for class certification).

Midland claims it would not be "sensible" to adjudicate on a class wide basis because many of its purchasers "appear satisfied" with their purchases.  Midland is simply conflating an absence of complaints with happiness, when it has no basis for doing so.  The tort alleged here is one of concealment of materials facts -- the absence of complaint could just as easily result from continued ignorance on the part of seniors, or feelings of confusion or helplessness, or even infirmity.  This is why the Hawai'i legislature has created laws to protect our *kupuna:* precisely because they

---

[9] Van West v. Midland Nat. Life Ins. Co., 199 F.R.D. 448, 454 (D.R.I. 2001), the case relied on by Midland, is clearly inapposite.  There plaintiffs claimed "misrepresentations by Midland to class members, in general, ***and by various agents and brokers to particular class members***" (emphasis supplied).  Since the representations by individual brokers would have to be resolved separately, the court found superiority was lacking.  This case focuses solely on ***Midland's*** conduct and representations.

may have difficulty vindicating their rights as consumers. To the extent that any members of the proposed class are "satisfied" they can simply exercise their right to opt out of the class.

## IV. CERTIFICATION UNDER RULE 23(B)(1) WOULD ALSO BE APPROPRIATE

Plaintiffs acknowledge that, in denying their prior motion for certification, the Court did indicate that the case was primarily one seeking monetary damages rather than injunctive relief and was not appropriate for certification under Rule 23(B) of the Federal Rules of Civil Procedure. However, they respectfully submit that this conclusion was erroneous, since it ignored a salient aspect of this case that distinguishes it from the garden variety suit for damages: Midland continues to hold and control the financial assets of the Plaintiffs. Plaintiffs seek injunctive and declaratory relief to gain control of all of their funds, by voiding the EIAs they entered into with Midland.

DATED: Honolulu, Hawaii, December 18, 2006.

*/S/ JAMES J. BICKERTON*

_____

JAMES J. BICKERTON
**Attorney for Plaintiffs**

19

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to LR 7.5(e), that "Plaintiffs' Reply Memorandum in Support of their Motion for Class Certification, filed on November 9, 2006" is in compliance with LR 7.5(b) because it is proportionately spaced, has a typeface of 14 points or more and contains 4,448 words, based on the word count generated by the word processing system to produce the memorandum.

DATED: Honolulu, Hawaii, December 18, 2006.

*/S/ JAMES J. BICKERTON*

_____

JAMES J. BICKERTON

Attorney for Plaintiffs