IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GARY YOKOYAMA, attorney-in-fact for Leatrice C. Yokoyama; CATHERINE E. THORSON; and EDNA C. YAMANE, by her attorney-in-fact Kathleen Maeda, individually and on behalf of a Class of Similarly Situated Persons,<br><br>      Plaintiffs,<br><br>      vs.<br><br>MIDLAND NATIONAL LIFE INSURANCE COMPANY,<br><br>      Defendant. | CIVIL NO. 05-00303 JMS-KSC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

On November 9, 2006, Plaintiffs Gary Yokoyama,
attorney-in-fact for Leatrice C. Yokoyama; Catherine E.
Thorson; and Edna C. Yamane, by her attorney-in-fact
Kathleen Maeda, individually and on behalf of a Class
of Similarly Situated Persons ("Plaintiffs") filed a
Motion for Class Certification ("Motion").  Pursuant to
Federal Rules of Civil Procedure ("Rules") 23(a) and

23(b)(3), Plaintiffs seek certification of a class of Hawaii seniors who, while age 65 or older, purchased a Midland equity-indexed annuity ("EIA").[1]

On November 27, 2006, Defendant Midland Life Insurance Company ("Defendant") filed its Opposition.[2] On December 18, 2006, Plaintiffs filed their Reply. In conjunction with Plaintiffs' Motion, Defendant filed the following related motions: (1) Defendant's Objections to and Motion to Exclude Declaration of

---

[1] Specifically, Plaintiffs define the class they seek to certify as follows: "[a]ll persons residing in Hawaii who from May 3, 2001 to the May 3, 2005 date of the filing of the Complaint herein, and while age 65 years or older, purchased a Midland EIA either directly or through the surrender (whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy, which annuity had a rate of return dictated by a specific market 'index.'" Plaintiffs' Memorandum in Support of Motion at 5. While Defendant refers to its product as a "fixed-indexed annuity" ("FIA"), rather than an EIA, the Court understands these terms as used by the parties to be interchangeable. The Court will refer to Defendant's product as an EIA for the purposes of this Motion.

[2] On December 21, 2006, Defendant filed an Amended Memorandum in Opposition that contained content identical to the Opposition but with different spacing.

2

Craig J. McCann; and (2) Defendant's Motion to Strike New Matter in Reply.

Pursuant to Local Rule 72.4(a)(4) of the Local Rules of the United States District Court for the District of Hawaii ("Local Rules"), this matter was designated to this Court by United States District Judge J. Michael Seabright on November 13, 2006.

The matters came on for hearing on January 31, 2007.  Attorney James Bickerton and Attorney Barry Sullivan appeared on behalf of Plaintiffs; Attorney Steven Jacobson and Attorney Robert Phillips appeared on behalf of Defendant.  At the hearing, the Court orally FOUND and RECOMMENDED that Defendant's Objections to and Motion to Exclude Declaration of Craig J. McCann be DENIED and that Defendant's Motion to Strike New Matter in Reply be DENIED.  The Court directed Attorney Bickerton to prepare the appropriate Findings and Recommendations.

After considering the Motion, the supporting and opposing memoranda, the exhibits, affidavits, and declarations, and the arguments of counsel, the Court

FINDS and RECOMMENDS that Plaintiffs' Motion be GRANTED.

## Background

On January 13, 2006, Plaintiffs filed their Second Amended Complaint against Defendant alleging that Defendant sold deferred annuities to seniors without regard to the unsuitability of this product for older customers.  On March 10, 2006, Plaintiffs filed a Motion for Class Certification pursuant to their Second Amended Complaint ("First Motion").  In their First Motion, Plaintiffs argued that Defendant's deferred annuities are unsuitable for most seniors and that Defendant should have taken steps to ensure that senior customers did not purchase an investment that was not appropriate for them.

On July 18, 2006, Judge Seabright issued an Order Denying Without Prejudice Plaintiffs' Motion for Class Certification dated July 18, 2006 ("Judge Seabright's Order").  Judge Seabright found that "disposition of the proposed class's claims, which turn on the suitability of Midland's product for the class

4

members, will require a fact-specific, individualized
analysis as to each plaintiff." Judge Seabright's
Order at 4. Specifically, Judge Seabright found that
individualized factors such as the age, financial need,
and financial sophistication of the proposed class
members, as well as evidence regarding the sales
practices of numerous independent brokers would require
consideration. Id. Judge Seabright determined that
"[b]ecause individual issues clearly predominate in the
Plaintiffs' suitability-based claims, certification of
the proposed class is inappropriate." Id. After
noting that Plaintiffs changed the theory of their case
in their reply memorandum, Judge Seabright denied the
First Motion without prejudice and granted Plaintiffs
leave to file a Third Amended Complaint and a new
motion for class certification based on any allegations
raised in the Third Amended Complaint. Id. at 5.

On July 25, 2006, Plaintiffs filed a Third
Amended Complaint. On November 28, 2006, a Stipulation
for Leave to File Fourth Amended Complaint and Order

5

was filed.[3]  In the Fourth Amended Complaint, Plaintiffs

allege that Defendant's conduct of selling Hawaii

seniors deferred annuity contracts violates Hawaii's

Unfair and Deceptive Trade Practices laws because "(1)

the products are inherently unfair or deceptive; (2)

the products are marketed in such a way to make them

unfair or deceptive; and (3) the products are

inherently unsuitable when sold to senior citizens."

Plaintiffs' Fourth Amended Complaint at 2.

     The central allegation in Plaintiffs' Fourth

Amended Complaint is that the sale of Defendant's EIAs

to seniors constitutes an unfair and deceptive scheme.

In their Motion, Plaintiffs argue that Defendant's

sales brochures are deceptive because they conceal the

large sales commissions paid to agents and up-front

profits gained by Defendant at the time of sale. See

Plaintiffs' Memorandum in Support of Motion at 2.  In

---

    [3] The Court notes that the Fourth Amended Complaint
was filed for the purpose of changing a single word in
the Third Amended Complaint.  Therefore, the filing of
the Fourth Amended Complaint, which occurred subsequent
to the filing of Plaintiffs' Motion, does not affect
the Court's analysis of the instant Motion.

addition, Plaintiffs argue that Defendant has built
into each contract a complex web of surrender periods,
surrender charges, interest adjustments and caps and
spreads on the index increases which are so poorly
disclosed that the consumer cannot see where his or her
funds have gone and cannot compare his or her
investment to other investments. Id.  Finally,
Plaintiffs assert that seniors have their assets frozen
by surrender periods and penalties extending years into
the future, in many cases longer than the senior is
likely to live. Id. at 3.

     In Plaintiffs' Motion, Plaintiffs seek to
certify the following class: "[a]ll persons residing in
Hawaii who from May 3, 2001 to the May 3, 2005 date of
the filing of the Complaint herein, and while age 65
years or older, purchased a Midland EIA either directly
or through the surrender (whole or part) of an existing
permanent life insurance policy or annuity, or by
borrowing against an existing permanent life insurance

policy, which annuity had a rate of return dictated by a specific market 'index.'" Plaintiffs' Memorandum in Support of Motion at 5.

<u>Analysis</u>

The Court may only certify a class if it is "satisfied, after a rigorous analysis," that the Rule 23 prerequisites for class certification are met. <u>General Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 161 (1982).  The party seeking certification has the burden of demonstrating that each of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) have been met. <u>See</u> <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1186, amended, 273 F.3d 1266 (9th Cir. 2001).

Courts may not consider the merits of a case when deciding the question of class certification. <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 (1974)("[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit to determine whether it may be maintained as a class action.").  However, "sometimes it may be necessary for

8

the court to probe behind the pleadings" to "determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." Falcon, 457 U.S. at 160.   The substantive allegations of the complaint must be taken as true at the class certification stage. Blackie v. Barrack, 524 F.2d 891, 901 & n.17 (9th Cir. 1975).

In Plaintiffs' Fourth Amended Complaint, Plaintiffs assert violations of Hawaii Revised Statute ("HRS") § 480-2, which prohibits unfair or deceptive acts or practices.   In Courbat v. Dahana Ranch, 141 P.3d 427, 435 (Haw. 2006), the Hawaii Supreme Court adopted the following test defining a deceptive act or practice as "(1) a representation, omission, or practice [] that (2) is likely to mislead consumers acting reasonably under the circumstances [where] (3) the representation, omission, or practice is material. A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" (citations omitted).   In addition, the Hawaii Supreme

9

Court clarified that proof of an unfair and deceptive practice is an objective test, focused on whether the act or omission is likely to mislead consumers. Id.

At the outset, the Court notes that the parties have argued the merits of their respective cases in the memoranda submitted in support of and in opposition to this Motion.  The parties have submitted voluminous exhibits, affidavits and declarations in support of their positions, respectively.  Consistent with Eisen, 417 U.S. at 177 and the Ninth Circuit's recent decision, Dukes v. Wal-mart, Inc.,___ F.3d ___; Nos. 04-16688, 04-16720, 2007 WL 329022 (9th Cir. Feb. 6, 2007), the Court will focus its analysis on the procedural question of whether the requirements for class certification have been met and will not address the merits of Plaintiffs' claims at this stage of the proceedings.

I. Rule 23(a)

Rule 23(a) sets forth four requirements for class certification: (1) numerosity, (2) commonality; (3) typicality; and (4) adequacy of representation.

10

Fed. R. Civ. P. 23(a).  The Court will address each of these requirements in turn.

A.   <u>Numerosity</u>

Rule 23(a)(1) provides that numerosity is satisfied if "the class is so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement calls for more than speculation, but less than an exact figure. Alba Conte & Herbert B. Newberg, 6 Newberg on Class Actions 18:2 (4th ed. 2002).

Here, the purported class has 624 members. Plaintiffs argue that numerosity is satisfied because it is difficult or inconvenient to join all members of the proposed class.  Plaintiffs' Memorandum in Support of Motion at 18.  Defendant does not contend that Plaintiffs have failed to satisfy the numerosity requirement.  Therefore, considering the circumstances presented in this case, including the number and age of the proposed class members, as well as the complexity of the issues presented, the Court finds that joinder of 624 class members would be impracticable.  Based on

the foregoing, the Court finds that numerosity is satisfied.

B.   <u>Commonality</u>

Rule 23(a)(2) states that commonality is established "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, not all questions of law and fact need be common to the class. <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). "Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Id.</u>  Thus, one significant issue common to the class may be sufficient to warrant certification. <u>See</u> <u>Dukes v. Wal-mart, Inc.</u>, ___ F.3d ___, 2007 WL 329022, at *4 (citations omitted).

<u>Negrete v. Allianz Life Ins. Co.</u>, 238 F.R.D. 482 (C.D. Cal. 2006) is similar to this case and instructive on the issue of commonality.  In <u>Negrete</u>, the plaintiffs alleged that a defendant insurer

12

conspired with a network of Field Marketing
Organizations to induce class members to purchase
deferred annuities issued by the insurer by means of
misleading statements and omissions regarding the value
of those annuities.  The court found that the
commonality requirement was met after determining that
common factual and legal issues included whether the
insurer entered into the alleged conspiracy and whether
its actions violated the RICO statute. Negrete, 238
F.R.D at 488.

The statutory bases for the claims in Negrete
differ from those in the instant case.  However, and
more importantly, allegations of a deceptive scheme
involving annuity sales are at the core of Negrete and
the instant lawsuit.  Here, Plaintiffs allege that
Defendant has engaged in deceptive practices in
violation of HRS § 480-2 through a common deceptive
marketing scheme.  Plaintiffs argue that the following
questions of fact and law are common to all class
members: (1) whether HRS Chapter 480 requires Defendant
to provide clear and accurate descriptions of its
annuities that includes the inherent material

13

disadvantages that make them unsuitable for seniors;
(2) whether Defendant has breached its statutory duty
by failing to disclose and actively concealing material
information that make its deferred annuities unsuitable
for seniors; (3) whether the guarantee of principal
protection and absence of risk are deceptive under HRS
Chapter 480; (4) whether Defendant's marketing
materials contained false or misleading fact or omitted
material facts; (5) whether Defendant deceptively
failed to disclose and explain the likelihood and risk
of its exercising a right to ratchet down crediting
rates; (6) whether Plaintiffs and members of the class
have sustained damages and, if so, what is the proper
measure of such damages; and (7) whether Plaintiffs and
members of the class are entitled to specific
performance, injunctive relief, restitution,
disgorgement or other equitable relief from Defendant.
Plaintiffs' Memorandum in Support of Motion at 22-23.

     The Court finds that the majority of
Plaintiffs' factual and legal allegations involved in
this case are derived from Plaintiffs' claim that
Defendant engaged in a deceptive marketing scheme aimed

14

at seniors.  Based on these allegations, the Court
finds that there are a significant number of salient
facts and related legal issues which are common to the
proposed class.  The requirement of commonality is
therefore satisfied.

    C.  <u>Typicality</u>

    Rule 23(a)(3) requires that the class
representatives have claims or defenses typical of the
class.  <u>See</u> Fed. R. Civ. P. 23(a)(3).  Typicality is
present if a plaintiff's claim "arises from the same
event or practice or course of conduct that gives rise
to the claims of other class members, and her or his
claims are based on the same legal theory." Newberg
18:8, at 26.  The main principle behind typicality is
that the plaintiff will advance the interests of the
class members by advancing her or his own self-
interest. <u>Id.</u> at 29.  "The test of typicality is
whether other members have the same or similar injury,
whether the action is based on conduct which is not
unique to the named plaintiffs, and whether other class
members have been injured by the same conduct." <u>Hanon</u>

15

v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)(internal quotation omitted).

In Negrete, the plaintiffs claims were based on an alleged course of conduct by the defendant insurer to "illegally target seniors for the purpose of selling them inferior deferred annuity products" as part of a single "overarching fraudulent scheme." Negrete, 238 F.R.D. at 488. The Court determined that plaintiffs claims arose from the "same event or course of conduct" and found that typicality was satisfied. Id.

Plaintiffs argue that their claims and the claims of the potential class members rest on the same legal theories of unfair and deceptive trade practices. Therefore, Plaintiffs assert that all members of the class stand to benefit from and undoubtedly would favor the relief requested from Defendant. Plaintiffs' Memorandum in Support of Motion at 24.

Similar to the court in Negrete, this Court finds that typicality is satisfied because Plaintiffs are alleging a common deceptive scheme that involves the same alleged course of conduct by Defendant.

D.   Adequacy of Representation

16

Rule 23(a)(4) requires that the class representatives will be able to fairly and adequately protect the interests of the class.  <u>See</u> Fed. R. Civ. P. 23(a)(4).  This requirement's purpose is to ensure that absent class members are "afforded adequate representation before entry of judgment which binds them." <u>Hanlon</u>, 150 F.3d at 1020.  Two inquiries are required to determine whether representation will be fair and adequate.  <u>Id.</u>  The first is whether the named plaintiffs have any conflicts of interest with other class members; the second is whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. <u>Id.</u>

Plaintiffs assert that the representative parties will fairly and adequately protect the interests of the class because the interests of the class representatives are coextensive and wholly compatible with those of the class members. Plaintiffs' Memorandum in Support of Motion at 25. While Defendant asserts that each named Plaintiff has a different circumstance that would require an individualized inquiry, Defendant does not appear to

17

challenge the named Plaintiffs' ability to fairly represent the interests of the proposed class.   In addition, Defendant does not challenge Plaintiffs' counsel's representation of the class members.   The Court finds that the named Plaintiffs do not have any apparent conflict with the proposed class members. Further, the Court finds that Plaintiffs' counsel are capable of vigorously prosecuting this case on behalf of the class.   Accordingly, the Court finds that named Plaintiffs and Plaintiffs' counsel can fairly and adequately represent the class members.

II.  <u>Rule 23(b)(3)</u>

In addition to the requirements of Rule 23(a), Plaintiffs must also satisfy the elements of Rule 23(b)(3)[4] which requires that:

> questions of law or fact common to the members of the class predominate over any questions affecting only

---

[4]  Plaintiffs claim that certification pursuant to Rule 23(b)(1), 23(b)(2), or 23(b)(3) is appropriate in this case.   In Judge Seabright's Order he previously determined that Plaintiffs must satisfy the requirements of Rule 23(b)(3).   The Court similarly finds that based on the allegations contained in the Fourth Amended Complaint, Plaintiffs must satisfy the requirements of Rule 23(b)(3).

18

individual members, and that a class
action is superior to other available
methods for the fair and efficient
adjudication of the controversy.  The
matters pertinent to the findings
include: (A) the interest of members
of the class in individually
controlling the prosecution or defense
of separate actions; (B) the extent
and nature of any litigation
concerning the controversy already
commenced by or against members of the
class; (C) the desirability or
undesirability of concentrating the
litigation of the claims in the
particular forum; (D) the difficulties
likely to be encountered in the
management of a class action.

Fed. R. Civ. P. 23(b)(3).

Defendant focuses its Opposition on the

predominance and superiority requirements of Rule

23(b)(3).

A.  Predominance

The predominance inquiry of Rule 23(b)(3) tests

whether proposed classes are sufficiently cohesive to

warrant adjudication by representation.  Hanlon, 150

F.3d at 1022.  "Implicit in the satisfaction of the

predominance test is the notion that the adjudication

of common issues will help achieve judicial economy."

Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180,

19

1189 (9th Cir. 2001)(citing <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996).  The predominance inquiry under Rule 23(b)(3) is more rigorous that the commonality requirement of Rule 23(a)(2). <u>Amchem Prods., Inc. V. Windsor,</u> 521 U.S. 591, 624 (1997).  The presence of commonality alone is not sufficient to fulfill the predominance requirement. <u>Hanlon</u>, 150 F.3d at 1022.  Rather, common issues must predominate over individualized claims. <u>See</u> Fed. R. Civ. P. 23(b)(3).

Plaintiffs argue that the threshold question, whether Defendant's sales of EIAs to seniors is an unfair and deceptive trade practice, is a common question that predominates over any individual questions in this case.  Plaintiffs' Memorandum in Support of Motion at 29.  Defendant, on the other hand, argues that proof of Plaintiffs' claims will require the resolution of numerous and predominating individual issues.[5]  Defendant contends that Plaintiffs' allegation

---

[5]  Defendant argues that Plaintiffs have a heightened burden of showing predominance and

that Defendant does not disclose commissions and
profits will require individualized inquiries to
determine whether each senior knew the broker was
receiving a commission, and if not, whether that
information would have made a difference.  Defendant's
Memorandum in Opposition at 20-21.  Defendant
additionally maintains that in order for information
contained in Defendant's brochures to be actionable,
Plaintiff must prove that each class member read the
materials and relied upon them. Id. at 21-22.
Defendant further argues that in evaluating each
senior's understanding of surrender charges, the index
margin, Defendant's right to change renewal rates, and
interest adjustments, it is necessary to make
individualized inquiries with respect to each broker's
oral presentation to each individual senior.  Id. at
22-24.

---

superiority in light of Judge Seabright's Order.
Defendant does not cite any authority to support its
contention.  The Court finds that Judge Seabright's
denial of Plaintiffs' First Motion without prejudice
does not place a heightened burden on Plaintiffs.

21

Defendant asserts that the named Plaintiffs'
own claims demonstrate that individual issues
predominate.  Defendant submits that each Plaintiff
earned money from his or her Midland EIA, and none of
the Plaintiffs incurred any fee or charge.  Id. at 29-
30.  Moreover, Defendant maintains that none the
Plaintiffs have offered any evidence that they read any
of the alleged misrepresentations, that any fact was
not disclosed, or that any undisclosed fact would have
made a difference to them.  Id. at 31.

As in Negrete, the central question for this
Motion is whether Plaintiffs have demonstrated the
existence of a plausible class-wide method for proving
that Defendant's acts or omissions related to the sale
of EIAs to seniors caused injury to class members. 238
F.R.D. at 489.  Plaintiffs must also show that a
plausible class-wide method exists for proving damages.
Id.  However, Negrete differs from the instant case
because the plaintiffs in that case were required to
show reliance on the part of class members in order to

22

establish causation as part of their Racketeer
Influenced and Corrupt Organizations Act ("RICO")
claim. See id.  Here, Plaintiffs' burden is arguably
lower because in order to establish their claims under
HRS § 480-2, they must satisfy an objective test and
prove that Defendant's actions or omissions were
"likely to mislead" a consumer. See Courbat, 141 P.3d
at 435.

Defendant places great emphasis upon the fact
that the sales of its EIAs involve both written
materials and oral presentations from different
independent brokers that vary in content.  Defendant
relies heavily upon In re LifeUSA Holding, Inc., 242
F.3d 136 (3d. Cir. 2001)(denying certification of a
class of plaintiffs alleging the defendant annuity
company's sales techniques constituted a fraudulent
scheme).  Defendant also relies upon the recent Second
Circuit opinion In re Initial Public Offering
Securities Litig., ___ F.3d ___; No. 05-3349, 2006 WL
3499931 (2d. Cir. Dec. 5, 2006)(denying certification

23

where plaintiffs were required to prove that each class member relied upon the alleged misrepresentations made by the defendant).  This case is distinguishable from both In re LifeUSA Holding and In re Initial Public Offering Securities Litig..  Here, standard written materials prepared by Defendant were presented to each customer and each customer was required to sign that he or she read and received these materials.  In In re LifeUSA Holding, the marketing materials were not distributed in a uniform manner and some agents discarded the written marketing materials entirely. 242 F.3d at 146.  Additionally, in this case Plaintiffs' claims are based on an objective "likely to deceive" standard which does not require Plaintiffs to prove individual reliance as in In re Initial Public Offering Securities Litig..

Significantly, the Ninth Circuit follows a different approach in evaluating class certification motions than the Second and Third Circuits. See In re First Alliance Mortgage Co.,471 F.3d 977, 990 & n.3

24

(9th Cir. 2006)("[w]hile some other courts have adopted somewhat different standards in identifying the degree of factual commonality required in the misrepresentations to class members in order to hold a defendant liable for class-wide fraud, this court has followed an approach that favors class treatment of fraud claims stemming from a 'common course of conduct.'").

Moreover, courts have found that the presence of individual oral presentations is not fatal to class certification.  See e.g., In re First Alliance Mortgage Co., 471 F.3d 977 (involving standardized oral sales presentations); Negrete, 238 F.R.D. at 492 (finding that "evidence of standardized written presentations, coupled with plaintiffs' allegations that class members purchased annuity products far less valuable than other comparable products or the prices paid for them" adequately established causation at the certification stage where differing oral presentations were involved); In re American Continental Corp./Lincoln

Savings & Loan Securities Litigation, 140 F.R.D. 425, 431 (D. Ariz. 1992)(stating that "[t]he exact wording of the oral misrepresentations, therefore, is not the predominant issue.  It is the underlying scheme which demands attention.").

As in the aforementioned cases, this Court finds that common issues predominate over individual issues in this case.  Here, the Court gives due consideration to the fact that Plaintiffs must prove their claims based on an objective test.  In evaluating a claim under HRS § 480-2, a court is required to consider whether a defendant's action or omission is likely to mislead a consumer acting reasonably.  See id.

Regarding damages, Plaintiffs have stated that their expert, Dr. McCann, has devised a formula for calculating damages in this case.  Without deciding the accuracy or validity of this proposed formula, the Court finds that any potential difficulties in calculation of individual damages does not defeat class

26

certification.  See Negrete, 238 F.R.D. at 494

(citations omitted) ("[t]he individuation of damages in

consumer class actions is rarely determinative under

Rule 23(b)(3).  Where [] common questions predominate

regarding liability, then courts generally find the

predominance requirement to be satisfied even if

individual damages issues remain.").  The Court only

finds that Dr. McCann's formula for computing damages

is plausible.[6]  Based on the foregoing, the Court finds

that common issues predominate over individual issues

in this case.


B.  Superiority

"The superiority inquiry under Rule 23(b)(3)

requires a determination of whether the objectives of

the class action procedure will be achieved in the

---

    [6]  In Negrete, 238 F.R.D. at 493, United States
District Judge Snyder similarly found that plaintiffs,
relying on a formula devised by Dr. McCann, had
presented a facially plausible method of proving
damages.

particular case." <u>Hanlon</u>, 150 F.3d at 1023 (citation omitted).  The Court must consider the following four factors of Rule 23(b)(3) when analyzing superiority: "(1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action." <u>Negrete</u>, 238 F.R.D. at 487 (citation omitted).

Plaintiffs argue that a class action is the most efficient and economical procedure for adjudicating Plaintiffs' claims.  Plaintiffs' Memorandum in Support of Motion at 31.  In addition, the class members have little incentive to litigate any claims against Defendant individually due to the high costs of pursuing their claims.  Id. at 33.

Defendant argues that because each senior's annuity sale arose from the presentations and recommendations of their independent brokers, each senior participating in the class action would have to either relinquish their claims against their brokers or sever their claims against their brokers into some separate proceeding. Defendant's Memorandum in Opposition at 32. Further, Defendant contends that class action treatment would make resolution of these issues much less manageable because resolution of each member's claims would involve a mini-trial to examine each class member's personal and financial status, communications between each broker and each class member at the point of sale, each class member's reliance, and whether the class member sustained any compensable loss. Id. at 32-33. Finally, Defendant asserts that most senior policyholders appear satisfied with their purchases and effective internal resolution procedures already exist. Id. at 33. Therefore, Defendant argues that class treatment of Plaintiffs'

claims is inferior and unworkable. Id. at 34. At oral argument, Defendant emphasized the point that the difficulty in calculating individual damages demonstrates that a class action would not be the superior method of adjudication.

In their Fourth Amended Complaint, Plaintiffs adjusted the theory of their case and recast their claims, shifting their focus to Defendant's alleged inherently deceptive business practices. As a result, much of the suitability analysis and individualized inquiries considered by Judge Seabright may no longer be necessary. After considering the objective standard to be applied in determining whether class-wide injury exists, the Court finds that class adjudication in this case is both manageable and the superior method of adjudication. As previously stated, the fact that individual members may seek separate damages does not defeat certification, especially since Plaintiffs have presented an apparently plausible method for calculating damages. See Negrete, 238 F.R.D. at 493.

30

## Conclusion

For all of the aforementioned reasons, the Court FINDS and RECOMMENDS that Plaintiffs' Motion be GRANTED and that the following class be certified: "[a]ll persons residing in Hawaii who from May 3, 2001 to the May 3, 2005 date of the filing of the Complaint herein, and while age 65 years or older, purchased a Midland EIA either directly or through the surrender (whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy, which annuity had a rate of return dictated by a specific market 'index.'" In recommending that the aforementioned class be certified, the Court again notes that its analysis and decision is limited herein to procedural questions and that adjudication of the merits of claims and defenses is not appropriate at this stage. The Court further FINDS and RECOMMENDS that notice be given to the class in accordance with Federal Rule of Civil Procedure

23(c)(2)(B) and Hawaii Rule of Civil Procedure

23(c)(2).

IT IS SO FOUND AND RECOMMENDED.

Dated:  Honolulu, Hawaii, February 13,  2007.



_____
Kevin S.C. Chang
United States Magistrate Judge

CV 05-00303 JMS-KSC; GARY YOKOYAMA, et al. v. MIDLAND LIFE INSURANCE COMPANY; FINDINGS
AND RECOMMENDATION TO GRANT MOTION FOR CLASS CERTIFICATION

32